**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINA ARSLANIAN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLERGAN PLC, ACTAVIS PLC, PAUL M. BISARO, ROBERT TODD JOYCE, BRENTON L. SAUNDERS, and MARIA TERESA HILADO,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Lina Arslanian ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Allergan plc and Actavis plc, analysts' reports and advisories about Allergan plc and Actavis plc, and information

readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired the securities of Allergan plc and/or the securities of Actavis plc between February 25, 2014 and November 3, 2016, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4. Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Allergan plc conducts business in this District and a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying PSLRA Certification, purchased securities of Allergan plc and/or securities of Actavis plc at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures. Plaintiff is a resident of Cape May County, NJ.

7. Defendant Allergan plc (formerly known as Actavis plc), is a specialty pharmaceutical company, that develops, manufactures, markets, and distributes medical aesthetics, biosimilar, and over-the-counter pharmaceutical products worldwide. Allergan plc is incorporated in Ireland with principal executive offices located at Clonshaugh Business and Technology Park, Coolock, Dublin, D17 E400, Ireland. This Defendant conducts business in this District. Since June 15, 2015, Allergan plc securities have traded on the NYSE under the ticker symbol "AGN".

8. Defendant Actavis plc preceded Allergan plc as SEC registrant. Prior to June 15, 2015, Actavis plc securities were traded on the NYSE under the ticker symbol "ACT". On June 15, 2015, in connection with Actavis plc's acquisition of Allergan, Inc., Actavis plc changed its corporate name to "Allergan plc" and changed its ticker symbol on the NYSE to "AGN".

9. Defendant Paul M. Bisaro ("Bisaro") served as the President and Chief Executive Officer ("CEO") of Actavis plc from September 4, 2007 to July 2014 and served as the Chairman of the Board from October 2013 to July 2014.

10. Defendant Robert Todd Joyce ("Joyce") served as the Global Chief Financial Officer ("CFO") of Actavis plc from April 27, 2012 to December 2014.

11. Defendant Brenton L. Saunders ("Saunders") has been the Chairman of the Board of Allergan plc since October 26, 2016 and as Allergan plc's CEO, President, and Director, since July 1, 2014.

12. Defendant Maria Teresa Hilado ("Hilado") has been the CFO and Executive Vice President of Allergan plc since December 8, 2014.

13. Defendants Bisaro, Joyce, Saunders, and Hilado are sometimes referred to herein as the "Individual Defendants."

14. Each of the Individual Defendants:

(a) directly participated in the management of Allergan plc and Actavis plc;

(b) was directly involved in the day-to-day operations of Allergan plc and Actavis plc at the highest levels;

(c) was privy to confidential proprietary information concerning Allergan plc and Actavis plc and their business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of Allergan plc's and Actavis plc's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning Allergan plc and Actavis plc; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

15. Allergan plc and Actavis plc are liable for the acts of the Individual Defendants and their employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

16. The scienter of the Individual Defendants and other employees and agents of Allergan plc and Actavis plc is similarly imputed to Allergan plc and Actavis plc under *respondeat superior* and agency principles.

17. Defendants Allergan plc and Actavis plc, and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

18. On February 25, 2014, Actavis plc filed a Form 10-K for the fiscal year ended December 31, 2013 (the "2013 10-K") with the SEC, which provided Actavis plc's year-end

financial results and position. The 2013 10-K was signed by Defendants Bisaro and Joyce. The 2013 10-K also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Bisaro and Joyce attesting to the accuracy of financial reporting, the disclosure of any material changes to Actavis plc's internal control over financial reporting, and the disclosure of all fraud.

19. The 2013 10-K discussed the strategies utilized by Actavis plc to grow its business, stating in pertinent part :

**Business Strategy**

We apply three key strategies to achieve growth for our Actavis Pharma and Actavis Specialty Brands pharmaceutical businesses: (i) internal development of differentiated and high-demand products, including, in certain circumstances, challenging patents associated with these products, (ii) establishment of strategic alliances and collaborations and (iii) acquisition of products and companies that complement our current business.

20. The 2013 10-K discussed the strategies utilized by Actavis plc "to effectively compete in the distribution market", stating in pertinent part :

We believe that we are able to effectively compete in the distribution market, and therefore optimize our market share, based on three critical elements: (i) competitive pricing, (ii) high levels of inventory for approximately 12,725 SKUs for responsive customer service that includes, among other things, next day delivery to the entire U.S., and (iii) well established telemarketing relationships with our customers, supplemented by our electronic ordering capabilities.

21. On February 18, 2015, Actavis plc filed a Form 10-K for the fiscal year ended December 31, 2014 (the "2014 10-K") with the SEC, which provided Actavis plc's year-end financial results and position and stated that its internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2014. The 2014 10-K was signed by Defendants Saunders, Bisaro, and Hilado. The 2014 10-K also contained signed SOX certifications by Defendants Saunders and Hilado attesting to the accuracy of financial reporting, the disclosure of any material changes to Actavis plc's internal control over financial reporting, and the disclosure of all fraud.

22.     The 2014 10-K discussed the strategies utilized by Actavis plc to grow its business, stating in pertinent part :

**Business Strategy**

We apply three key strategies to achieve growth for our North American Brands and North American Generics and International businesses: (i) internal development of differentiated and high-demand products, including, in certain circumstances as it relates to generics, challenging patents associated with these products, (ii) establishment of strategic alliances and collaborations and (iii) acquisition of products and companies that complement our current business.

23.     The 2014 10-K discussed the strategies utilized by Actavis plc "to effectively compete in the distribution market", stating in pertinent part :

We believe that we are able to effectively compete in the distribution market, and therefore optimize our market share, based on three critical elements: (i) competitive pricing, (ii) high levels of inventory for approximately 12,650 SKUs for responsive customer service that includes, among other things, next day delivery to the entire U.S., and (iii) well-established telemarketing relationships with our customers, supplemented by our electronic ordering capabilities.

24.     On February 26, 2016, Allergan plc filed a Form 10-K for the fiscal year ended December 31, 2015 (the "2015 10-K") with the SEC, which provided Allergan plc's year-end financial results and position and stated that its internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2015. The 2015 10-K was signed by Defendants Saunders, Bisaro, and Hilado. The 2015 10-K also contained signed SOX certifications by Defendants Saunders and Hilado attesting to the accuracy of financial reporting, the disclosure of any material changes to Allergan plc's internal control over financial reporting, and the disclosure of all fraud.

25.     The 2015 10-K discussed the strategies utilized by Allergan plc to grow its business, stating in pertinent part :

**Business Strategy**

> We apply three key strategies to achieve growth for our US Brands, US Medical Aesthetics and International Brands businesses: (i) internal development of differentiated and high-demand products, (ii) establishment of strategic alliances and collaborations and (iii) acquisition of products and companies that complement our current business.

26.     The 2015 10-K discussed the strategies utilized by Allergan plc "to effectively compete in the distribution market", stating in pertinent part :

> We believe that we are able to effectively compete in the distribution market, and therefore optimize our market share, based on three critical elements: (i) competitive pricing, (ii) high levels of inventory for approximately 13,200 SKUs for responsive customer service that includes, among other things, next day delivery to the entire U.S., and (iii) well-established telemarketing relationships with our customers, supplemented by our electronic ordering capabilities.

27.     The statements referenced in ¶¶ 18 – 26 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to Allergan plc's and Actavis plc's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Allergan plc and Actavis plc were engaging and/or had engaged in conduct that would result in an antitrust investigation by the U.S. Department of Justice ("DOJ"); (2) the DOJ investigation and the underlying conduct could cause U.S. prosecutors to file criminal charges against Allergan plc and Actavis plc by the end of 2016 for suspected price collusion; and (3) in turn, between 2014-2015 Allergan plc and Actavis plc lacked effective internal controls over financial reporting; and (4) as a result, Allergan plc's and Actavis plc's public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

28.     On August 6, 2015, Allergan plc filed a Form 10-Q for the period ended June 30, 2015, announcing that, "[o]n June 25, 2015, the Company received a subpoena from the

U.S. Department of Justice ("DOJ"), Antitrust Division seeking information relating to the marketing and pricing of certain of the Company's generic products and communications with competitors about such products."

29. On August 6, 2015, *Bloomberg* published an article titled "Allergan Brought Into Widening U.S. Probe of Generic Drug Prices", revealing that "Allergan Plc's Actavis unit got a subpoena from the U.S. Justice Department seeking information on the marketing and prices of its generic drugs, becoming the biggest company yet to draw scrutiny in the government's widening antitrust probe of the industry", joining other companies who "have made similar disclosures in the past several months."

30. On this news, shares of Allergan plc fell $17.17 per share, or approximately 5%, from its previous closing price to close at $319.47 per share on August 6, 2015, damaging investors.

31. On November 3, 2016, *Bloomberg* published an article titled "U.S. Charges in Generic-Drug Probe to Be Filed by Year-End", revealing that in connection with the U.S. Justice Department's investigation of a dozen companies, including Allergan plc, U.S. prosecutors may file criminal charges by the end of 2016 for suspected price collusion, stating in pertinent part:

**U.S. Charges in Generic-Drug Probe to Be Filed by Year-End**

November 3, 2016 — 2:10 PM EDT

U.S. prosecutors are bearing down on generic pharmaceutical companies in a sweeping criminal investigation into suspected price collusion, a fresh challenge for an industry that's already reeling from public outrage over the spiraling costs of some medicines.

The antitrust investigation by the Justice Department, begun about two years ago, now spans more than a dozen companies and about two dozen drugs, according to people familiar with the matter. **The grand jury probe is examining whether some executives agreed with one another to raise prices, and the first charges could emerge by the end of the year, they said.**

Though individual companies have made various disclosures about the inquiry, they have identified only a handful of drugs under scrutiny, including a heart treatment and an antibiotic. Among the drugmakers to have received subpoenas are industry giants Mylan NV and Teva Pharmaceutical Industries Ltd. Other companies include Actavis, which Teva bought from Allergan Plc in August, Lannett Co., Impax Laboratories Inc., Covis Pharma Holdings Sarl, Sun Pharmaceutical Industries Ltd., Mayne Pharma Group Ltd., Endo International Plc's subsidiary Par Pharmaceutical Holdings and Taro Pharmaceutical Industries Ltd.

\*     \*     \*

Allergan, Impax and Sun declined to comment beyond their filings. Representatives of Endo, Covis, Taro and Lannett didn't respond to requests for comment. A Justice Department spokesman declined to comment.

Shares of all companies named in the investigation fell on the news. Lannett dropped 27 percent to close at $17.25 in New York trading. Impax fell 20 percent to $16.50. Endo declined 19 percent to $14.63, while Teva slipped 9.5 percent to $39.20, **Allergan fell 4.6 percent to $188.82** and Mylan fell 6.9 percent to $34.14. Shares of Concordia International Corp., which bought most of Covis's assets, fell 5.6 percent to 4.37 Canadian dollars. Taro shares fell 7.3 percent to $93.68.

[Emphasis added].

32.     On this news, shares of Allergan plc fell $9.07 per share, or over 4% from its previous closing price to close at $188.82 per share on November 3, 2016, further damaging investors.

33.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Allergan plc securities, Plaintiff and other Class members have suffered significant losses and damages.

<u>**PLAINTIFF'S CLASS ACTION ALLEGATIONS**</u>

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Allergan plc securities and Actavis plc securities traded on the NYSE

during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of Allergan plc and Actavis plc, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Allergan plc securities and Actavis plc securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Allergan plc and Actavis plc or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of Allergan plc and Actavis plc;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused Allergan plc and Actavis plc to issue false and misleading SEC filings and public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

- whether the prices of Allergan plc securities and Actavis plc securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

40. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Allergan plc securities are traded in efficient markets and Actavis plc securities were traded in efficient markets;

- Allergan plc securities and Actavis plc securities were liquid and traded with moderate to heavy volume during the Class Period;

- Allergan plc and Actavis plc traded on the NYSE, and were covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of Allergan plc securities and Actavis plc securities; and

- Plaintiff and members of the Class purchased and/or sold Allergan plc securities and/or Actavis plc securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. This Count is asserted against Allergan plc and Actavis plc and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45. During the Class Period, Allergan plc and Actavis plc and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were

misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46. Allergan plc and Actavis plc and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Allergan plc securities and Actavis plc securities during the Class Period.

47. Allergan plc and Actavis plc and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of both Allergan plc and Actavis plc were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Allergan plc and Actavis plc, their control over, and/or receipt and/or modification of Allergan plc and Actavis plc allegedly materially misleading statements, and/or their associations with Allergan plc and Actavis plc which made them privy to confidential proprietary information concerning Allergan plc and Actavis plc, participated in the fraudulent scheme alleged herein.

48. Individual Defendants, who are the senior officers and/or directors of Allergan plc and Actavis plc, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed

to ascertain and disclose the true facts in the statements made by them or other Allergan plc and Actavis plc personnel to members of the investing public, including Plaintiff and the Class.

49. As a result of the foregoing, the market price of Allergan plc securities and Actavis plc securities were artificially inflated during the Class Period. In ignorance of the falsity of Allergan plc's and Actavis plc's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Allergan plc securities and Actavis plc securities during the Class Period in purchasing Allergan plc securities and/or Actavis plc securities at prices that were artificially inflated as a result of Allergan plc's and Actavis plc's and the Individual Defendants' false and misleading statements.

50. Had Plaintiff and the other members of the Class been aware that the market price of Allergan plc securities and Actavis plc securities had been artificially and falsely inflated by Allergan plc's and Actavis plc's and the Individual Defendants' misleading statements and by the material adverse information which Allergan plc and Actavis plc and the Individual Defendants did not disclose, they would not have purchased Allergan plcs securities and/or Actavis plc securities at the artificially inflated prices that they did, or at all.

51. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

52. By reason of the foregoing, Allergan plc and Actavis plc and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Allergan plc securities and/or Actavis plc securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

53. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. During the Class Period, the Individual Defendants participated in the operation and management of Allergan plc and Actavis plc, and conducted and participated, directly and indirectly, in the conduct of Allergan plc's and Actavis plc's business affairs. Because of their senior positions, they knew the adverse non-public information regarding Allergan plc's and Actavis plc's business practices.

55. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Allergan plc's and Actavis plc's financial condition and results of operations, and to correct promptly any public statements issued by Allergan plc and Actavis plc which had become materially false or misleading.

56. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Allergan plc and Actavis plc disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Allergan plc and Actavis plc to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Allergan plc and Actavis plc within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Allergan plc securities and Actavis plc securities.

57. Each of the Individual Defendants, therefore, acted as a controlling person of Allergan plc and Actavis plc. By reason of their senior management positions and/or being directors of Allergan plc and Actavis plc, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Allergan plc and Actavis plc to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Allergan plc and Actavis plc and possessed

the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

58. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Allergan plc and Actavis plc.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: January 2, 2017

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By:   /s/ Laurence Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*